**Marvin E. BARNETT, Petitioner,**

v.

**Mack H. ALFORD, Warden, et al., Respondents.**

**No. CIV–78–1006–D.**

United States District Court, W.D. Oklahoma.

Aug. 31, 1981.

Marvin E. Barnett, pro se.

Jan Eric Cartwright, Atty. Gen., Michael Avant-Pybas, Asst. Atty. Gen., Oklahoma City, Okl., for respondents.

### MEMORANDUM OPINION

DAUGHERTY, District Judge.

This case is again before the Court in connection with petitioner's Petition for Writ of Habeas Corpus asserting the ineffectiveness of counsel by reason of his failure to perfect an appeal of petitioner's conviction and life sentence on July 3, 1965 for Murder. The instant review results from a

remand by the Court of Appeals following the Supreme Court's vacation of an earlier decision, 446 U.S. 963, 100 S.Ct. 2937, 64 L.Ed.2d 821, of the Court of Appeals affirming this Court's dismissal of the instant Petition. *Barnett v. Alford,* 635 F.2d 820 (10th Cir.1981). The Court has ordered the record to be expanded under Rule 7, Rules Governing § 2254 Cases, 28 U.S.C.A. and has also entered an Order in accordance with *Reed v. United States,* 438 F.2d 1154 (10th Cir.1971) that the parties proceed to take the deposition of a non-party witness, Archibald Hill who was counsel for the petitioner during the state trial proceedings. Said deposition has now been filed and reviewed by the Court along with the trial court record (hereinafter referenced as R._____), the respondents have filed a Motion to Dismiss Delayed Petition, and the Court finds and concludes as follows:

## I.

The petitioner was charged jointly with the murder of an Oklahoma City police officer on July 27, 1964 with his brother, Robert Charles Barnett, and one Harold Clevis Taylor. The record reflects that Archibald Hill, Jr., was the principal retained counsel for both Robert Charles Barnett and the petitioner, although attorney Albert Alexander also appears therein, and that Hill was a member of the Oklahoma House of Representatives. Several "legislative continuances" of the trial setting were obtained by Hill under 12 O.S. § 667, but trial proceedings finally commenced June 14, 1965 and concluded with a verdict of guilty on June 26, 1965. (R. 273–279.) The judgment and sentence of the trial judge, John A. Brett, was entered on July 3, 1965 sentencing the petitioner to life imprisonment. (R. 173–174.) Judgment and sentence as to defendant Robert Charles Barnett was entered on a jury verdict of guilty on May 12, 1965 sentencing said defendant to life imprisonment. (R. 121.) The charge against co-defendant Taylor was dismissed. (R. 169–170.)

Post-trial proceedings included a hearing on a motion for a new trial citing 12 grounds in support thereof which was filed on July 3, 1954 at which time petitioner appeared in person and with attorneys Hill and Alexander for sentencing. Upon denial of the motion for a new trial, the court sentenced the petitioner whereupon the petitioner gave oral notice in open court of intent to appeal and was given additional time to prepare the casemade. (R. 175–176, 280.) On September 21, 1965 the petitioner directed a letter to the State court file requesting trial records for the purpose of appealing the judgment along with a motion and oath of forma pauperis. (R. 179–188.) A letter dated October 14, 1965 was addressed by the petitioner to Judge Brett requesting a casemade and an Order of Judge Brett dated October 19, 1965 overruled said request for failure to timely file a request therefor. (R. 189–190.) In a letter dated October 19, 1965 Judge Brett also advised the petitioner in considerable detail regarding the factual and legal circumstances regarding petitioner's appeal right, advised that time for appeal would expire January 3, 1966, and suggested that application be made to the Court of Criminal Appeals for the casemade. (R. 191–192.) On January 7, 1966 attorney Hill filed a Petition for Writ of Error Coram Nobis in the District Court of Oklahoma County on the basis of co-defendant Robert Charles Barnett's admission that he committed the offense as charged and his statement of exoneration of the petitioner. (R. 193–195.) Therein, it was also recognized that time for direct appeal had expired. Subsequent pleadings in the state court record pertain primarily to state post-conviction action, the first of which was a Petition for Writ of Habeas Corpus filed April 30, 1970 raising the following issues:

"(1) Failure to be advised of his rights at the time of arrest and of questioning by the police.

(2) Failure to be provided with counsel during the time the police interrogated him.

(3) Failure to be provided with counsel during the hearing before the Justice of the Peace.

(4) He was denied the right to appeal. (Arraingment) [sic]

(5) That the attorney was incompetant. [sic]

(6) Improper jury selection in that all people that did not believe in the death penalty were automatically excluded from sitting on the jury."

The deposition of attorney Hill is summarized as follows: Hill was retained to represent petitioner at trial, that his representation avoided the death penalty in a case in which a black defendant was charged with killing a white police officer, that he advised the petitioner by letter dated November 30, 1965 (copy to the Court of Criminal Appeals) of his right to appeal and that any further representation would depend upon his payment of an attorney fee for appeal purposes, that attorney Hill did not appeal the conviction, that an appeal and reversal would not necessarily be in the petitioner's best interest in view of the potential imposition of the death penalty, and that he never received a fee for appeal or made a commitment to the petitioner to appeal his conviction.

## II.

In *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court recently recognized that ineffective representation by privately retained counsel is also justiciable under the Sixth Amendment in a federal habeas corpus action and the applicability of that case herein is unquestioned. Therein, the Court opined:

"A proper respect for the Sixth Amendment disarms petitioner's contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the state appoints counsel. We may assume with confidence that most counsel, whether retained or appointed, will protect the rights of an accused. But experience teaches that, in some cases, retained counsel will not provide adequate representation. The vital guarantee of the Sixth Amendment would stand for little

if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. Since the state's conduct of a criminal trial itself implicates the state in the defendant's conviction, we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers." id. at 344–345, 100 S.Ct. at 1716.

Cf., *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) which outlines the requirements of appointed counsel upon appeal. The basis for the instant action is the ineffectiveness of counsel on appeal and, although petitioner is not required to show prejudice from the alleged deprivation, he has alleged, inter alia, that he was not advised of his constitutional rights or afforded counsel at the time of arrest and preliminary proceedings, ineffective trial counsel, and improper petit jury selection. *Miller v. McCarthy,* 607 F.2d 854, 857 (9th Cir.1979). It is undisputed that the State of Oklahoma has established procedures for appeal of a criminal conviction and that, therefore, the right of appeal cannot be forfeited by neglect of privately retained counsel in violation of the Sixth Amendment. *Perez v. Wainwright,* 640 F.2d 596 (5th Cir.1981). It is also clear that there is truly no issue of ineffectiveness of counsel on appeal herein since no appeal was filed by counsel for the petitioner, who was not only not compensated for an appeal, but also believed that the risks inherent in a successful appeal and retrial would not be in his client's best interest. *Moore v. Wainwright,* 633 F.2d 406, 407 (5th Cir. 1981).

The record explicitly shows that petitioner was advised in 1965 in open court and in a detailed letter by the trial judge of his rights to appeal and of the procedure to be followed through application to the Court of Criminal Appeals for relief from the failure to timely request a case-made (transcript) in writing. This the petitioner did not do, and neither did he affirmatively act to protect his rights when his trial coun-

sel confirmed in a letter, prior to expiration of the time for perfecting an appeal, that appeal representation was not forthcoming since he had not been retained for such purpose. It further appears that plaintiff delayed further pursuit of this issue until 1970 when a Petition for Writ of Habeas Corpus was filed in the District Court of Oklahoma County. Under these circumstances, the Court is led to the inexorable conclusion that the limited function of counsel in the post-trial pre-appeal stage was satisfied and that the petitioner, who was properly informed of appeal rights, simply waived his right to appeal. *Shiflett v. Commonwealth of Virginia,* 447 F.2d 50, 54 (4th Cir.1971); *Jackson v. Turner,* 442 F.2d 1303, 1307 (10th Cir.1971). During this limited period counsel's performance was compatible with the minimum standard of professional representation. *Dyer v. Crisp,* 613 F.2d 275 (10th Cir.1980), cert. denied, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980).

### III.

■ Moreover, the classic problems arising from a delayed Petition for Writ of Habeas Corpus in proving facts and events which occurred over 15 years ago, are manifest herein. Both the prosecutor and defense counsel are unable to recall pertinent trial facts and circumstances, the trial judge is deceased, and neither the court reporter or her notes can be located for preparation of a transcript of the trial. Under Rule 9(a), Rules Governing § 2254 proceedings, 28 U.S.C.A., a petition for writ of habeas corpus may be dismissed if it appears that the state has been prejudiced in its ability to respond by delay in its filing:

"(a) Delayed petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petitioner by delay in its filing unless the petition shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred."

It is the Court's opinion that the respondent has satisfied the particularized showing of prejudice apart from the mere delay in the filing of the instant Petition and that plaintiff has not rebutted his prejudice. This prejudice is inherent in view of the lack of a transcript of the proceedings to be reviewed, and that witnesses pertinent to the issue raised herein are either deceased or have little or no independent recollection of the pertinent facts. Since factual reconstruction is not a viable alternative, and the lack of a transcript mitigates against a delayed or out-of-time appeal, the Court finds that respondent's motion to dismiss the delayed Petition is well taken and is hereby sustained. *Bouchillon v. Estelle,* 628 F.2d 926 (5th Cir.1980); *Davis v. Adult Parole Authority,* 512 F.Supp. 533, 537–538 (S.D. Ohio 1981); *Silva v. Zahradnick,* 445 F.Supp. 331 (E.D.Va.1978).

Accordingly, it is hereby ordered this 31 day of August, 1981 that the petitioner's Petition for Writ of Habeas Corpus and the cause of action contained therein be and the same hereby is denied.